## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

HARRISON MULFORD III, RHONDA
NEWBY, CORY FOX, and RICHARD
DeLUNA, on behalf of themselves and all
others similarly situated,

       Plaintiffs,

v.                                   No. Civ. 05-659 MV/RHS

ALTRIA GROUP, INC., and
PHILIP MORRIS, USA, INC.,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Class Certification,
filed July 28, 2006, **[Doc. No. 68]**.  Only Defendant Philip Morris, USA, Inc. ("Defendant Philip
Morris") filed a response to the motion.  The Court, having considered the motion, briefs,
relevant law, and being otherwise fully informed, finds that the motion is not well-taken and will
be **DENIED.**

## <u>FACTUAL BACKGROUND</u>

Plaintiffs filed a class action suit against Defendant Philip Morris and Defendant Altria
Group, Inc., ("Defendants") alleging that Defendants violated the New Mexico Unfair Practices
Act ("UPA"), NMSA 1978, § 57-12-1 *et seq.*, by using the terms "lights" and "lowered in tar and

nicotine" on their Cambridge Lights and Marlboro Lights cigarette packages.[1]  According to

Plaintiffs, the use of these descriptors on cigarette packages violated the UPA by misleading the

public into believing that Marlboro Lights and Cambridge Lights deliver reduced levels of tar and

nicotine when, in fact, they do not.  Plaintiffs now seek to certify a class consisting of all

"consumers who purchased Defendants' Marlboro Lights and Cambridge Lights cigarettes in the

State of New Mexico."

## LEGAL ANALYSIS

The class-action device was designed as "an exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S.

682, 700-701 (1979).  Class relief is "peculiarly appropriate" when the "issues involved are

common to the class as a whole" and when they "turn on questions of law applicable in the same

manner to each member of the class." *Id*. at 701.  In such cases, "the class-action device saves the

resources of both the courts and the parties by permitting an issue potentially affecting every class

member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. v. Falcon*, 457

U.S. 147, 155 (1982) (quotation omitted).

A party seeking to certify a class is required to show "under a strict burden of proof," that

all the requirements of Rule 23(a) are clearly met.  *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th

Cir. 1988) (quotation omitted).   A class action may only be certified "if the court is satisfied, after

a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co.*, 457

---

[1]  Plaintiffs made a number of claims regarding how the manufacture and marketing of
these cigarettes violated the UPA.  Following summary judgement, however, the only surviving
claim is that the use of the descriptors "lights" and "lower in tar and nicotine" on the cigarette
packages violated the UPA.

U.S. at 161; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (court must

take a "close look" at case before accepting it as a class action).  If the court determines that the

four prerequisites of Rule 23(a) are satisfied, "it must then examine whether the action falls within

one of the three categories of suits set forth in Rule 23(b)." *Adamson v. Bowen*, 855 F.2d 668,

675 (10th Cir. 1988).

A class certification determination "generally involves considerations that are enmeshed in

the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co.*, 457 U.S. at

160 (internal quotation marks omitted).  "Sometimes the issues are plain enough from the

pleadings to determine whether [the requirements of Rule 23 are satisfied], and sometimes it may

be necessary for the court to probe behind the pleadings before coming to rest on the certification

question.  . . . [A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."

*Id.*; *see also* Fed.R.Civ.P. 23(b)(3) (court must make "findings" that the requirements of Rule 23

have been satisfied); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("the class

determination generally involves considerations that are 'enmeshed in the factual and legal issues

comprising the plaintiff's cause of action.' "); *id.* at 469 n. 12, ("'Evaluation of many of the

questions entering into determination of class action questions is intimately involved with the

merits of the claims. The typicality of the representative's claim or defenses . . . and the presence

of common questions of law or fact are obvious examples.  The more complex determinations

required in Rule 23(b)(3) class actions entail even greater entanglement with the

merits.'")(quoting 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911,

p. 485 n. 45 (1976)).  Thus, while Rule 23 does not permit the court to inquire into whether a

plaintiff will prevail on the merits, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), the

court may go beyond the pleadings and consider legal and factual issues related to the merits if necessary to determine whether each Rule 23 requirement has been met.[2]  Whether to certify a

---

[2]  In *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir.1999), the Tenth Circuit, in a footnote and without any analysis, stated that "when deciding a motion for class certification, the district court should accept the allegations contained in the complaint as true. However, it need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." (internal cites and quotes omitted). *Id.* at 1290 n. 7.  The Court interprets this statement as permitting a district court to consider matters beyond the pleadings, including matters that touch upon the merits, if necessary to ensure that the requirements of Rule 23 are satisfied.  This interpretation is consistent with other Tenth Circuit cases recognizing that ensuring that the Rule 23 requirements are met may require a court to consider matters beyond the pleadings.  *See, e.g., Adamson,* 855 F.2d at 676 & 677 n. 12 (noting that the "merits may become intertwined with proper consideration of other issues germane to whether the case should be certified as a class action" and instructing the district court, when considering class certification, to "avoid focusing on the merits underlying the class claim" that are "not germane to the question of certification"); *Reed*, 849 F.2d at 1310 (upholding district court's denial of class certification on the grounds that plaintiffs failed to prove that there was a group of individuals in the proposed class who had an existing live and continuing interest in the issue raised in the complaint).  Furthermore, this interpretation is consistent with the position of the overwhelming majority of other circuits and the Supreme Court, which have held that a district court is not limited to the allegations raised in the complaint, and should instead make whatever legal and factual inquiries are necessary to make an informed determination of the certification issues.  *See, e.g., Gen. Tel. Co.*, 457 U.S. at 160 ("sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"); *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 5-6 (1st Cir. 2005) (reiterating its preference for the majority view that permits inquiry into the merits if necessary to make an informed class-certification decision); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2nd Cir. 2006) (holding that "(1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established . . .; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) ("[B]ecause the determination of a certification request invariably involves some examination of factual and legal issues underlying the plaintiffs' cause of action, a court may consider the substantive elements of the plaintiff's case") (quoting 5 Moore's Federal Practice § 23.46[4]); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) ("If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule

class is within the broad discretion of the district court and "[t]here is no abuse of discretion when the trial court applies the correct criteria to the facts of the case." *Reed*, 849 F.2d at 1309.[3]

Because the class certification inquiry necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims, the Court will start its analysis with an overview of the UPA.

### A.  New Mexico Unfair Trade Practices Act

_____

23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a "close look" at relevant matters, *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231, for conducting a "rigorous analysis" of such matters, *Falcon*, 457 U.S. at 161, 102 S.Ct. 2364, and for making "findings" that the requirements of Rule 23 have been satisfied, *see* Fed.R.Civ.P. 23(b)(3)."); *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues"); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) ("Before deciding whether to allow a case to proceed as a class action, . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23" even if "the judge must make a preliminary inquiry into the merits"); *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) ("The preliminary inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case."). In addition, Rule 23 was amended in 2003 to require that the determination whether to certify a class be made "at an early practicable time" rather than "as soon as practicable." The Advisory Committee Notes state that the change was made because "[t]ime may be needed to gather information necessary to make the certification decision. Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis." Fed. R. Civ. P. 23(c)(1) advisory committee note. Thus, it is clear that Rule 23 itself contemplates that the court will consider information beyond that contained in the complaint.

[3]  In addition to the similar litigation regarding lights cigarettes occurring in other districts, there are at least two nationwide class actions already in progress. *See U.S. v. Philip Morris*, Case No. Civ. A. 99-2496(GK) (D.D.C.) and *Schwab v. Philip Morris*, Case No. 04-CV-1945 (E.D.N.Y). Although not addressed by the parties, the Court is concerned that these cases potentially render the requested relief in this case moot. *See Adamson*, 855 F.2d at 677, n. 12 (noting that a nationwide class action may render requested relief in statewide case moot).

The UPA provides a private right of action for "[a]ny person who suffers any loss of money or property" as a result of an unfair trade practice.  NMSA 1978 § 57-12-10(B).  An "unfair or deceptive trade practice" is defined as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale . . of goods or services . . . by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person."  *Id*. at § 57-12-2(D).  To state a claim under the UPA, a plaintiff must show that: (1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person.  *Brooks v. Norwest Corp*., 136 N.M. 599, 611 (2004).

The UPA authorizes both injunctive relief and monetary damages.  Injunctive relief is not conditioned upon proof of monetary loss.  Any person *likely* to be damaged by an unfair or deceptive trade practice of another may obtain injunctive relief:

> A person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required.

NMSA 1978 § 57-12-10(A).

In contrast, recovery of damages under the statute is limited to those persons "who suffer any loss of money or property" as a result of the deceptive practice:[4]

---

[4]   While the language of the statute appears to require proof of a loss of money or property prior to the award of any damages, in at least one case the New Mexico Supreme Court has awarded statutory damages in the absence of proof of actual damages.  In *Page & Wirtz*

> Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater.   Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

NMSA 1978 § 57-12-10(B).

While named plaintiffs may be awarded statutory damages upon proof of a violation and can also recover treble damages, members of a class are limited to the recovery of actual damages:

> In any class action filed under this section, the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice.

NMSA 1978 § 57-12-10(E).

A claimant under the UPA need not allege detrimental reliance on the deceptive practice in order to state a valid claim.  In *Smoot v. Physicians Life Ins. Co.*, 135 N.M. 265 (Ct. App. 2003), a policyholder brought a class action against a life insurer to recover under the UPA for failure to disclose the additional cost of paying insurance premiums in installments.  In holding that the

---

*Construction Co. v. Solomon*, 110 N.M. 206 (1990), the New Mexico Supreme Court, finding that although substantial evidence existed that the UPA had been violated there was no evidence that these actions resulted in any loss to the plaintiff, awarded plaintiff "one hundred dollars, which may be trebled by the court when the party willfully has engaged in the unfair or deceptive practice."  *Id.* at 212.  This ruling appears to be inconsistent with other cases declining to award any damages under the UPA in the absence of a showing of loss of money or property. *See, e.g., Brooks,* 136 N.M. at 611 (to prove a claim under the UPA plaintiffs must establish that defendant's conduct caused plaintiffs to suffer "actual damages"); *Chavarria v. Fleetwood Retail Corp. of New Mexico*, 137 N.M. 783 (Ct. App. 2005), *partially rev'd on other grounds*, 140 N.M. 478 (2006) (reversing award of damages on the grounds that evidence was insufficient to establish that plaintiffs sustained any actual injury as a result of the deceptive practice in question).

plaintiff's complaint stated a claim based on a statutory duty to disclose under the UPA, the court

rejected defendant's assertion that proof of actual damages or proximate causation necessarily

required proof of reliance:

> Defendant mistakenly contends that the statutory requirement for a causal
> connection between the deceptive practice and the claimant's damages equates to a
> requirement that the claimant prove detrimental reliance.  However, causation and
> reliance are distinct concepts.  Causation requires a nexus between a defendant's
> conduct and a plaintiff's loss; reliance concerns the nexus between a defendant's
> conduct and a plaintiff's purchase or sale.

*Smoot,* 135 N.M. at 270.

The court held that while the UPA required proof of a causal link between defendant's

deceptive conduct and plaintiff's loss, it did not require proof of a link between defendant's

deceptive conduct and plaintiff's purchase of the product.  *Id.*  Thus, while a plaintiff need not

prove that she relied on defendant's deceptive conduct in order to recover under the UPA, she

must prove that she suffered a loss of money or property as a result of the deceptive conduct.  *See*

*Brooks,* 136 N.M. at 611 (to prove a claim under the UPA plaintiffs must establish causation--that

defendant's conduct caused plaintiffs to suffer "actual damages").

### B.  Federal Rule of Civil Procedure 23(a)

Federal Rule of Civil Procedure 23(a) sets forth four prerequisites that must be met in

order to bring an action as a class action.  The four threshold requirements of Rule 23(a) are: "(1)

the class is so numerous that joinder of all members is impracticable, (2) there are questions of

law or fact common to the class, (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class, and (4) the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a).  These four prerequisites to a class action

8

are referred to as numerosity, commonality, typicality, and adequacy of representation. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 828 n. 6 (1999).  A party seeking class certification must show "under a strict burden of proof" that all four requirements of Rule 23(a) are clearly met.  *Reed,* 849 F.2d at 1309.  The fact that Defendant Philip Morris's response does not address Plaintiffs' Rule 23(a) argument does not relieve the Court of its duty to engage in a "rigorous analysis" of whether "the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co.*, 457 U.S. at 161.[5]  The Court simply must engage in this analysis without the benefit of any input from Defendant Philip Morris.

### i.  Numerosity

"The burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976).  Plaintiffs estimate, and Defendant Philip Morris does not dispute, that the proposed class numbers in the hundreds of thousands.  Clearly a class of this potential size is so numerous that joinder is impracticable.  *See, e.g., Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976) (certifying class of 358 persons); *Yazzie v. Ray Vickers' Special Cars, Inc.*, 180 F.R.d. 411 (D.N.M. 1998) (certifying class of 210 persons).

### ii.  Commonality

Rule 23(a) requires that there be issues of law or fact common to the class.  Commonality "requires only a single issue common to the class." *K.L. v. Valdez*, 167 F.R.D. 688, 690 (D.N.M.

---

[5]  In its response, Defendant Philip Morris states in a footnote that it "focuses here on plaintiffs' failure to satisfy Rule 23(b)'s requirements, but does not concede Rule 23(a)'s requirements."  Simply stating that an argument is not conceded is, in effect, a failure to respond.  Failure to respond to an argument is generally deemed an acquiescence.

1996) (citation omitted).  Thus, "[t]he commonality requirement is met if plaintiffs' grievances

share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.

1997).  "That the claims of individual class members may differ factually should not preclude

certification under Rule 23(b)(2) of a claim seeking the application of a common policy."

*Adamson*, 855 F.2d at 676.  "The district court retains discretion to determine commonality

because it is 'in the best position to determine the facts of the case, to appreciate the

consequences of alternative methods of resolving the issues of the case and . . . to select the most

efficient method for their resolution.'" *J.B.,* 186 F.3d at 1289 (quoting *Boughton v. Cotter Corp.*,

65 F.3d 823, 825 (10th Cir. 1995)).

   The liability issue in this case--whether the packaging of Marlboro Lights and Cambridge

Lights cigarettes "may, tends to, or does deceive or mislead any person" in violation of the UPA--

is common to the entire class.  "Where a question of law involves standardized conduct of the

defendants toward members of the proposed class, a common nucleus of operative fact is typically

presented, and the commonality requirement of Rule 23(a)(2) is usually met." *Yazzie*, 180 F.R.D.

at 416 (internal quotes and citation omitted).  Furthermore, resolution of this common legal issue

will advance the litigation.  *See Deboer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.

1995) ("Rule 23 is satisfied when a legal question linking the class members is substantially related

to the resolution of the litigation.").  Consequently, the Court finds that the commonality

prerequisite has been satisfied.

### iii.  Typicality

   The third requirement of Rule 23(a) is that the claims of the representative parties be

"typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  The purpose of the typicality

requirement is to assure that the interests of the named class representative align with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought."  *Id.*  "Differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."  *Adamson*, 855 F.2d at 676.

Defendants' alleged false representations regarding Marlboro Lights were made in the identical manner to Plaintiffs and the other members of the proposed class of Marlboro Lights purchasers.  Thus, Plaintiffs are similarly situated to other consumers of Marlboro Lights and the interests of the class representatives align with the interests of that class.

It is undisputed, however, that none of the named plaintiffs purchased or smoked Cambridge Lights cigarettes.  Plaintiffs contend, without citing any legal support, that even though they did not purchase or smoke Cambridge Lights, they can represent the interests of Cambridge Lights smokers because Cambridge Lights are merely a "sister-brand" to Marlboro Lights and Defendants' conduct with respect to its Cambridge Lights brand gives rise to the very same liability and damages.  Even if the Court were to find that it was appropriate for smokers of one brand of cigarettes to represent the smokers of a "sister-brand" of cigarettes, the claims under the UPA regarding Cambridge Lights cigarettes differ from the claims regarding Marlboro Lights cigarettes because the packages of the two brands of cigarettes are different.  According to the undisputed evidence before the Court, the descriptor "lower in tar and nicotine" was never used on the Cambridge Lights packages.  Consequently, the questions of law and fact regarding the Cambridge Lights packages and the questions of law and fact regarding the Marlboro Lights

packages are not sufficiently similar that purchasers of Marlboro Lights could represent the rights of purchasers of Cambridge Lights and purchasers of Cambridge Lights cigarettes will be excluded from the purported class.

### iv.  Adequacy of Representation

The fourth requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  As to the adequacy requirement, two questions must be resolved: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10 Cir. 2002).   No evidence of any potential conflicts of interest has been presented to the Court.  Furthermore, Plaintiffs have come forward with undisputed evidence demonstrating the skill, experience, and vigorous representation of Plaintiffs' counsel.  Therefore, the Court finds that Plaintiffs will "fairly and adequately protect the interests of the class" in satisfaction of Fed. R. Civ. P. 23(a)(4).

Having found that the Rule 23(a) prerequisites are satisfied, the Court must now determine if the action falls within one of the three categories of suits set forth in Rule 23(b). *Adamson*, 855 F.2d at 675 (if the court determines that the four prerequisites of Rule 23(a) are satisfied "it must then examine whether the action falls within one of the three categories of suits set forth in Rule 23(b)."). Plaintiffs seek class certification pursuant to both Rule 23(b)2 and 23(b)(3).

### C.  Federal Rule of Civil Procedure 23(b)(2)

Plaintiffs assert that class certification under Rule 23(b)(2) is appropriate because Plaintiffs

and the class seek injunctive relief on the basis that Defendants have acted on grounds generally applicable to the class.  Rule 23(b)(2) provides that an action may be maintained as a class action if the prerequisites of Rule 23 (a) are satisfied, and

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2).

The Tenth Circuit has adopted the position taken by the advisory committee that for a class certification under Rule 23(b)(2) to be appropriate, injunctive or declaratory relief must be the predominant remedy requested for class members.  *See* Fed. R. Civ. P. 23(b)(2) advisory committee note ("The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004) ("because it is clear from the pleadings here that the primary relief sought is monetary damages, the district court did not abuse its discretion in denying certification on this ground"); *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995) (finding the district court did not abuse its discretion where it declined to certify the class under Rule 23(b)(2) because the relief sought was primarily money damages).  This requirement does not preclude the award of monetary damages on a class-wide basis but the monetary relief must be either part of the equitable relief granted or secondary or ancillary to the predominant injunctive or declaratory relief sought.  *But see Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (noting existence of "at least a substantial possibility" that actions seeking money damages are certifiable only under Rule 23(b)(3)).

After examining Plaintiffs' complaint, the Court finds that the predominant relief requested

is monetary damages, not injunctive relief.  In fact, it is not even clear from the complaint that

Plaintiffs are seeking injunctive relief.  The only possible reference to injunctive or declaratory

relief in Plaintiffs' complaint is one sentence stating that "Plaintiffs' [sic] pray that this Court

declare and determine that Defendants have violated [the UPA]."  This ambiguous sentence, when

considered in conjunction with the numerous and specific requests for monetary damages, is

insufficient to support a finding that the predominant relief requested is injunctive or declaratory

relief.  Notably, in their motion Plaintiffs do not even argue that the predominant relief requested

is injunctive relief.  The Court accordingly declines to certify the class under Rule 23(b)(2).  The

parties or the Court remain free to revisit the issue later in the case should circumstances evolve.

### D.  Federal Rule Civil Procedure 23(b)(3)

Plaintiffs also seek certification of a class action under Rule 23(b)(3).  Before a class

action can be certified under Rule 23(b)(3), it is necessary for the Court to find that "questions of

law or fact common to the members of the class predominate over any questions affecting only

individual members" and that a class action is "superior to other available methods for the fair and

efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see also Monreal v. Potter*,

367 F.3d 1224, 1237 (10th Cir. 2004).

### i.  Predominance

The predominance requirement is similar to, but "far more demanding" than, the

commonality requirement of Rule 23(a).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24

(1997). While commonality requires the presence of common questions of law and fact,

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class

predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

The requirement of Rule 23(b)(3) that common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623.

The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136-40 (2d Cir. 2001). If, to make a *prima facie* showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. *Id.* If the same evidence will suffice for each member to make a *prima facie* showing, then it becomes a common question. *Id.*

Plaintiffs assert that the predominance requirement is met because "Defendants' fraudulent and illegal actions, as described in the Complaint, are based on the same set of facts, and these common questions of fact and law predominate. Each class member was affected by Defendants' class-wide illegal conduct; [sic] and the only individual question is the precise amount of damages sustained by the class." Plaintiffs' Motion at p. 16.

Defendant Philip Morris, in contrast, asserts that Plaintiffs' UPA claim raises individualized issues that cannot be resolved on a class-wide basis:

> Even assuming that PM USA's "Lights" and "Lowered Tar and Nicotine" descriptors were misleading- and they were not - each and every putative class member would need to show (1) that they purchased Light cigarettes "as a result of" the allegedly deceptive statement; (2) that they failed to receive what PM USA allegedly promised, *i.e.*, less tar and nicotine from Lights; and (3) that this resulted in a "loss of money or property," that is, that they lost money because of PM USA's alleged UPA violation.

Defendant Philip Morris's Opp. at p. 2. Defendant Philip Morris contends that these individualized issues overwhelm any common issues raised by Defendants' alleged conduct.

The Court agrees with Plaintiffs that whether Defendants' use of the challenged descriptors violated the UPA is a common question to the entire class.  Proof of a statutory violation alone, however, does not entitle a plaintiff to recover damages under the UPA.  A plaintiff must also establish causation, loss, and damages.  *See* NMSA 1978 § 57-12-10(B) ("Any person who suffers *any loss* of money or property, real or personal, *as a result of* any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover *actual damages* or the sum of one hundred dollars ($100), whichever is greater.") (emphasis added).  The Court therefore must also determine whether causation, loss, and damages may be proven with class-wide evidence.

Defendant Philip Morris argues that Plaintiffs must show that they purchased Light cigarettes "as a result of" the allegedly deceptive statements.  This is essentially the same reliance argument rejected by the New Mexico courts in *Smoot*.  The *Smoot* court made it very clear that the UPA requires only that a consumer suffer *a loss* as a result of the deception, not that the consumer *purchase* the product as a result of the deception.  *Smoot,* 135 N.M. at 270.  Accordingly, the Court finds that the individual motivations of class members for choosing to purchase Marlboro Lights cigarettes are not relevant for purposes of determining the claims of the class and provide no basis to find that individual issues predominate over class-wide issues.

In order to recover damages under the UPA, Plaintiffs must show that each member of the class suffered an economic loss as a result of the alleged deception.   In this case, Plaintiffs must show that Marlboro Lights cigarettes did not deliver the promised lower tar and nicotine, and, therefore, class members received a product of lesser economic value.  In most cases, this showing is fairly simply--the product was not what it was represented to be and, instead, was a

product of lesser economic value.  *See, e.g., Hale v. Basin Motor Co.*, 110 N.M. 314 (1990) (when dealer sold buyers an automobile without disclosing that it had previously been wrecked and repaired, buyers of automobile were entitled to recover difference in the fair market value between the automobile as represented and as it existed).  In the case of lights cigarettes, however, the analysis is not so straightforward.

It is undisputed that as they sat in the box, Marlboro Lights had less tar and nicotine per cigarette than Marlboro Regulars.  Whether a smoker actually received less tar and nicotine, however, depended on how the cigarette was smoked.  According to the evidence provided to the Court, some smokers change their smoking behavior after switching to a lower tar and nicotine product in order to achieve the level of nicotine delivery to which they had become accustomed. This is referred to as compensation.[6]  If a smoker compensates "completely" when switching to a lower tar and nicotine product, the smoker may receive the same amount of tar and nicotine as he or she received from regular cigarettes.  If a smoker does not compensate or compensates "incompletely," the smoker receives lower tar and nicotine from a light cigarette.

Plaintiffs, without providing any support, assert that no smokers received less tar and nicotine from Marlboro Lights cigarettes, *i.e.* that every smoker compensated completely, such that causation and loss can be proven on a class-wide basis.[7]  Defendant Philip Morris, in contrast,

---

[6] According to the affidavit submitted by Defendant Philip Morris, there are a number of different ways that a smoker can compensate, including taking larger puffs, taking more frequent puffs, blocking ventilation holes with fingers, blocking ventilation holes with lips, and smoking the cigarette to a shorter butt length.  *See* Valberg Aff. at ¶ 25.

[7] Plaintiffs cite to a portion of a 1975 Philip Morris memorandum purportedly reporting that a study conducted by Philip Morris revealed that smokers did not achieve any reduction in smoke intake by smoking Marlboro Lights.  Defendant Philip Morris has submitted an affidavit from that study's author stating that the study found that 40% of subjects who switched from

has provided substantial evidence, which Plaintiffs do not dispute, that a significant percentage of smokers do not compensate at all or compensate incompletely.  Defendant Philip Morris submitted an expert affidavit concluding, based on an examination of sixteen smoker studies conducted over a twenty-year time period, that the "overwhelming majority of smokers exhibit less than complete compensation," and that more than half of the smoker trial results "showed less than 50% compensation."  Affidavit of Peter A. Valberg ("Valberg Aff.") at ¶ 47.  Another study submitted by Defendant Philip Morris found that approximately 32% of the adult smokers in New Mexico are non-addicted smokers who do not compensate.  *See* Affidavit of Eric Kaplan ("Kaplan Aff.") at ¶¶ 37-38.

In the absence of any supporting evidence and in the face of undisputed contradictory evidence, the Court cannot accept Plaintiffs' assertion that no smokers received less tar and nicotine from Marlboro Lights cigarettes.  *See, e.g.*, *Pearson v. Philip Morris, Inc.*, No. 0211-11891, 2006 WL 663004 (Or. Cir., Feb. 23, 2006) ("While the court does not determine the merits in the certification proceeding, it must have evidence, and not merely representations of counsel, that a type of proof is available.").  Based on the undisputed evidence, the Court concludes, for purposes of the class certification motion only,[8] that a significant number of persons in the purported class received the promised lower tar and nicotine from Marlboro Lights

---

Marlboro Regulars to Lights received less tar and nicotine.  (Affidavit of Barbro Goodman at ¶¶ 23-27.)  Ms. Goodman also asserts that Philip Morris's follow-up studies using the same methodology all found that subjects who regularly smoked Marlboro Lights got less tar from their Marlboro Lights cigarettes than the subjects who regularly smoked Marlboro Regulars go from their cigarettes.  *Id*. at ¶¶ 26, 28-30.  Plaintiffs have not disputed these statements.

[8]  Any findings for purposes of determine whether a Rule 23 requirement is met are not binding on the ultimate factfinder.  *See, e.g., Gariety*, 368 F.3d at 366.

cigarettes.  Consequently, evidence regarding each purported class member's smoking habits must
be submitted in order to demonstrate causation and loss.  The need for individual evidence to
determine if members of the proposed class suffered a loss strongly suggests that the proposed
class is not sufficiently cohesive to warrant adjudication by representation.  *See, e.g., Boughton v.
Cotter Corp.*, 65 F.3d 823, 826-28 (10th Cir. 1995) (in action based on alleged exposure of
persons and property to hazardous emissions of uranium mill, court did not abuse discretion in
refusing to certify class under Rule 23(b)(3) based on finding that individual issues, including
whether purchasers were aware of contamination and the extent and nature of injuries,
predominated); *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d
1001, 1012 (8th Cir. 2003) (holding that because applicable statute provided a right to recover
only to persons who sustained damages as a result of a carrier violation, recovery for any plaintiff
would be based on individual, not common, questions of fact and therefore class certification was
inappropriate); *Harding v. Playtex Family Products Corp.*, 165 F.R.D. 623, 629-31
(D.Kan.1996) (issues requiring individual adjudication, including causation and damages,
predominated in toxic shock syndrome litigation, precluding class certification under Rule
23(b)(3)); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 213-14 (D. Minn. 2003) (denying class
certification in a drug defect case where some putative plaintiffs received the benefit of the drug
and therefore "received their money's worth").

Other courts in the numerous similar lights cigarettes cases have reached differing
conclusions on the need for individualized evidence to demonstrate causation and loss.  In
*Aspinall v. Phillip Morris Companies*, 442 Mass. 381 (2004), the primary case relied upon by
Plaintiffs, smokers brought a similar action against the manufacturer and marketer of Marlboro

Lights cigarettes alleging deceptive trade practices.  In determining whether the marketing of

Marlboro Lights cigarettes as delivering "lowered tar and nicotine" could be challenged in a class

action under Massachusetts's consumer protection statute, the court held that "[n]o individual

inquiries concerning each class member's smoking behavior are required to determine whether the

defendants' conduct caused compensable injury to all the members of the class--consumers of

Marlboro Lights were injured when they purchased a product that, when used as directed,

exposed them to substantial and inherent health risks that were not (as a reasonable consumer

likely could have been misled into believing) minimized by their choice of the defendants' 'light'

cigarettes." *Aspinall*, 442 Mass. at 488.  The court was willing to include potential persons in the

class who actually received lower tar and nicotine because it was alleged by plaintiffs that the

overwhelming majority of smokers did not receive less tar and nicotine. *Id.* at 489 n. 21, ("the

members of the class who have not suffered the 'injury' of higher tar and nicotine are both very

few in number and impossible to identify.").  Three judges dissented from the majority opinion on

the grounds that plaintiffs had presented insufficient evidence for the court to determine how

many members of the proposed plaintiff class received lower levels of tar and nicotine or that the

smokers who received low-tar were "impossible to identify."  *Id.* at 403-409.

The court in *Pearson v. Philip Morris, Inc*., No. 0211-11891, 2006 WL 663004 (Or. Cir.,

Feb. 23, 2006) reached the opposite conclusion.  In *Pearson*, plaintiffs alleged that defendant

violated Oregon's Unlawful Trade Practices Act ("UTPA") by using the term "lights" in the

product name and by placing the descriptor "lowered tar and nicotine" on its Marlboro Lights

packages.  Plaintiffs moved to certify a class consisting of all purchasers of Marlboro Lights

cigarettes in Oregon.  In their class certification motion, plaintiffs contended that certification of

the proposed class was appropriate because regardless of how a Marlboro Lights cigarette was smoked (or whether it was smoked at all), a UTPA claim arose at the moment of purchase because the cigarette was not inherently lower in tar and nicotine than a Marlboro Regular. Defendant countered that because not all smokers engage in compensation, or do not compensate completely, many members of the class got exactly what was represented and what they paid for-- a cigarette that delivered lowered tar and nicotine. Consequently, whether any class member suffered an "ascertainable loss" depended on how the cigarettes were smoked.

The *Pearson* court rejected plaintiffs' argument, noting that "[p]laintiffs here do not allege that Marlboro Lights cigarettes do not contain lowered tar and nicotine as they sit in their packages. Instead, plaintiffs' allegations are cast in terms of how much tar and nicotine the cigarettes 'deliver' when they are smoked." *Pearson*, 2006 WL 663004 at *6.  The court concluded that the "evidence before the court is that the same individual smoker may receive different amounts of tar and nicotine from different cigarettes in the same pack, depending on the circumstances in which the cigarette is smoked, including the time of day, whether the smoker is feeling stress and other variables. I would not require proof as to the circumstances in which each cigarette, or even each pack of cigarettes was smoked. But each member of the class would have to prove that for a given period of time during which a certain number of packs were purchased, the smoker of those cigarettes was on average receiving as much tar and nicotine from them as he or she would have received from the same number of Marlboro Regulars." *Id*. at *7.  As a result, the court concluded that a class action would not be superior to individual actions for adjudication of the controversy because "individual issues vastly predominate over the common issues of fact and law." *Id*. at *1;  *see also Philip Morris USA Inc. v. Hines*, 883 So.2d 292 (Fla. Dist. Ct. App.

2004) (reversing Circuit Court's certification of a class because common questions of law and fact did not predominate over individual issues and noting that whether a smoker "reaped the benefits of a lower tar and nicotine cigarette depended upon how the cigarettes were smoked"); *Davies v. Philip Morris U.S.A., Inc.*, No. 04-2-08174-2 SEA, 2006 WL 1600067 (Wash. Super. Ct. May 26, 2006) (denying motion for class certification in similar lights cigarettes challenge because inherently individual questions related to causation and damages "overwhelmingly predominate[d] over the common questions of deceptive acts or practices"); *but see Craft v. Philip Morris Companies, Inc.*, No. 002-00406A, 2003 WL 23355745, at * 4 (Mo. Cir. Dec. 31, 2003) (finding, for purposes of a class certification motion, that "there are indications in the record that 'compensation' may be a virtually universal behavioral characteristic of all smokers of so called 'low tar' cigarettes, including Marlboro Lights.  If so, then the individual differences in smoking behavior would have no effect in terms of requiring individual mini-trials for each class member, because despite any such differences, each class member would still have received a product that in fact did not deliver, to him or her, lower yields of tar and nicotine.").

The Court finds the reasoning of *Pearson* on this issue more persuasive than the reasoning of *Aspinall.*  The *Aspinall* court determined that individual evidence regarding compensation was not required because "the members of the class who have not suffered the 'injury' of higher tar and nicotine are both very few in number and impossible to identify."  This finding is not supported by the record in this case. The undisputed evidence is that a significant number of smokers received the promised lower tar and nicotine from Marlboro Lights.  Consequently, on the record before it, the Court cannot find, as the *Aspinall* court did, that virtually no members of the proposed class actually received less tar and nicotine from Marlboro Lights.  In addition, there

is no information in the record suggesting that smokers who received lower tar and nicotine are

impossible, or even difficult, to identify.

The fundamental question in the case is whether Defendants' representation that a pack of

Marlboro Lights would deliver lower tar and nicotine than Marlboro Regulars is false. The answer

to that question requires each class member to prove that the person who smoked the cigarettes

actually received something other than "lowered tar and nicotine."  Due to the individualized

nature of tar and nicotine delivery, causation and loss cannot be established on a class-wide basis.

Defendant Philip Morris also asserts that whether a plaintiff suffered a "loss of money or

property" as a result of Defendants' alleged deception cannot be proven with class-wide evidence:

> Because the price of regular cigarettes and Lights has always been the same,
> smokers who switched to Lights cannot show they lost money unless they prove
> they would have spent less money on cigarettes (such as by quitting smoking or by
> switching to another brand).  That showing requires individualized proof.

Defendant Philip Morris's Opp. at 3.

While New Mexico does not appear to have addressed the issue, other courts interpreting

similar statutes in the context of nearly identical lights cigarettes claims have noted that a loss can

be shown simply by providing evidence that a plaintiff purchased a product that was falsely

represented as a product of greater economic value.  *See Craft,* 2003 WL 23355745 at *8

(economic harm element is satisfied "whenever a plaintiff can simply show that he purchased a

product that was falsely represented, and that he thereby received a product that would have been

worth more money if it had truly been as represented").  Proof of injury (whether or not an injury

occurred at all) must be distinguished from calculation of damages (which determines the actual

value of the injury).  Proof of economic injury requires only that Plaintiffs show that Marlboro

23

Lights were falsely represented as a product of greater economic value.  This determination can be made on a class-wide basis.  While the relative price of regular and lights cigarettes potentially may be relevant to calculating damages, it is not relevant to determining injury.

Under the UPA, each purported class member may recover only his or her "actual damages."  Consequently, it is clear that any damages calculation will require some level of individualized determinations.  Plaintiffs propose that damages be computed based on the theory that the value of a pack of Marlboro Lights was diminished by virtue of the fact that it was not as it was represented to be.  Assumably, each Plaintiff's damages would then be determined based on the number of packs of Marlboro Lights purchased during the relevant time period.  At this stage, the Court takes no position on whether this is the correct, or even an acceptable, measure of damages under the UPA. The fact that damages potentially may be calculated, at least partially, using a class-wide formula supports the certification of a class.  If necessary, the Court has a number of tools available to address the individualized damages issues.

Finally, Defendant Philip Morris argues that its statute of limitations and comparative fault defenses will both require individualized inquiries into each Plaintiff's actual knowledge about lights cigarettes.  To establish these affirmative defenses, Defendant Philip Morris asserts that it must develop evidence regarding each person's knowledge of the issues surrounding lights cigarettes, particularly if or when a smoker learned that the amount of tar and nicotine delivered by lights cigarettes varies by smoking behavior and may not be less than regular cigarettes and whether a smoker continued to purchase lights cigarettes after learning the risks of smoking lights cigarettes.  *See, e.g., Page & Wirtz Construction Co.*, 110 N.M. at 212 (noting that "it is difficult to conceive of a false or misleading statement resulting in damages when the statement is not

24

believed or relied upon").

Affirmative defenses may be considered as one factor in the class certification calculus.[9] While the existence of affirmative defenses that may require individualized evidence does not compel a finding that individual issues predominate over common ones, it does weigh against class certification.  *See, e.g., Waste Management Holdings,* 208 F.3d at 296 ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).").  In this case, the Court finds that the existence of two highly individualized affirmative defenses weighs heavily against class certification.  *See, e.g., Craft,* 2003 WL 23355745 at *12 (acknowledging that statutes of limitation argument in similar lights cigarettes challenge was a "substantial argument" presenting individualized questions of law and fact that "may have a later effect on the scope or even the very existence of a class").

The remaining question is whether the individualized questions related to causation, loss and the affirmative defenses overwhelm the common issue raised by Defendants' conduct.  The Court concludes that they do.  The liability issue that is common to the class is relatively simple

---

[9]   *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295-97 (1st Cir. 2000) (noting that "we regard the law as settled that affirmative defenses should be considered in making class certification decisions"); *Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (affirming denial of class certification in statewide smokers' suit, because "addiction, causation, the defenses of comparative and contributory negligence, the need for medical monitoring and the statute of limitations present too many individual issues to permit certification"); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ("when the defendant's affirmative defenses (such as the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous"); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues").

compared to the time and effort it will take to resolve the individual issues, particularly the issues related to causation, loss, and affirmative defenses. Thus, the Court finds that individual issues predominate such that a class action is not warranted. While the Court's finding that individual issues predominate over class-wide issues precludes certification of the class pursuant to Rule 23(b)(3), in the interests of completeness the Court will also consider the superiority requirement of Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b)(3) (class may be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.") (emphasis added).

### ii. Superiority

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" before certification is proper. The rule lists four non-exhaustive factors to be considered in determining whether a class action suit is superior:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The intent of the first factor is to ensure vindication of "the rights of persons who

individually would be without effective strength to bring their opponents into court at all." *Emig v. American Tobacco Co., Inc.*, 184 F.R.D. 379, 392 (D. Kan.1998) (quoting *Amchem,* 521 U.S. at 617). In those types of cases, persons with claims too small to maintain individually may band together in order to have their claims adjudicated as a class. This is particularly effective when the amount of damages is regulated by statute or otherwise such that any award would be disbursed uniformly among class members. However, where, as here, some individual plaintiffs potentially may receive relatively large damages awards,[10] they possess a substantial stake and motivation to make individual decisions such that a class action is not necessarily superior to individual litigation.

The second factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits. *See* 7A Charles Alan Wright *et al.*, Federal Practice and Procedure § 1780, at 568-69 (2d ed.1986). A class action may be appropriate if there is a clear threat of multiplicity and a risk of inconsistent adjudications. *Id.* In this case, multiple lawsuits may be filed if class certification is denied. Methods other than class certification may be utilized to effectively manage these cases, however, and the Court discerns no risk of inconsistent adjudications.

The third factor concerns whether the forum chosen for the class action represents an appropriate place to settle the controversy, given the location of the interested parties, the availability of witnesses and evidence, and the condition of the court's calendar. This forum is an

---

[10] The proposed class includes all persons who purchased Marlboro Lights cigarettes in New Mexico during the past thirty or so years. Many of these persons likely smoked one or more packs of cigarettes per day. Even assuming that Marlboro Lights were smoked for only a part of this period, the potential recovery per person would not be insignificant.

appropriate place for this case.

The fourth factor requires an evaluation of the management difficulties likely to be encountered if the action is continued as a class suit. The manageability factor encompasses the "whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). This proposed class action implicates numerous practical problems that effect the superiority of pursuing this matter as a class action rather than undertaking individual adjudication. As discussed above, individual questions related to causation, loss, and affirmative defenses would severely complicate resolution of this action.[11] When individual rather than common issues predominate, the economy and efficiency of class action treatment are lost. *See, e.g.*, Wright & Miller, supra, § 1778; *Barreras Ruiz v. American Tobacco Co.*, 180 F.R.D. 194, 198 D.P.R.1998) (quoting *Castano*, 84 F.3d at 744 n. 19) (the greater the number of individual issues, the less likely it is that superiority can be established). Given the predominance of individual issues over class issues, a class action is not superior to other forms of action to resolve these issues.

Furthermore, it appears entirely feasible for Plaintiffs to bring their claims individually under the UPA. *See Jones v. Gen. Motors Corp.*, 124 N.M. 606, 611 (Ct. Ap. 1998) (observing that the UPA encourages consumers to initiate, and attorneys to handle, claims where the amounts recoverable are small). Significantly, Plaintiffs' argument concerning the prohibitive cost of bringing individual suits is wholly undermined by the fact that the UPA awards attorney fees and costs to a successful litigant. *See* § 57-12-10(C). Individual plaintiffs also may recover

---

[11]  Plaintiffs did not submit a trial plan so the Court does not know how Plaintiffs would propose addressing these issues if this case were tried as a class action.

greater damages under the UPA than members of a class.  *See* NMSA 1978 § 57-12-10(E) (recovery of statutory and treble damages limited to named plaintiffs; class members limited to recovery of actual damages).  Hence, the UPA not only provides a remedy for Plaintiffs, it also appears to be less fair to individual plaintiffs to pursue their remedy as a class action.

There are other potential benefits to individual actions under the UPA. First, the issue of whether Defendants' use of the descriptors "light" and "lower in tar and nicotine" are deceptive under the UPA is a question that is common to the class.  If Plaintiffs are successful in their individual claims, these issues might be sufficiently established to collaterally estop Defendants from raising the same issue in subsequent litigations. *See, e.g., Rex, Inc. v. Manufactured Housing Comm.*, 134 N.M. 533, 536 (Ct. App. 2003) ("Our Supreme Court has also adopted the doctrine of offensive collateral estoppel, which may be applied "when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether [the] plaintiff was privy to the prior action."); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 164, (Ct. App. 1993) ("New Mexico recognizes both defensive and offensive collateral estoppel.").  As noted by the New Mexico Court of Appeals in the context of a banking fees challenge under the UPA, the benefit of proceeding as individual actions under the UPA with the potential for collateral estoppel on a common issue "is two-fold: first it would prevent the potential waste of judicial resources and costs adjudicating uncertain, novel issues in a class action; second, any subsequent litigations would be far less complicated and less costly.  Damage issues are inherently less complex and costly on an individual basis than as a class action that requires compilation and analysis of hundreds of thousands of individual accounts." *Brooks*, 136 N.M. at 613-14.

For all the above reasons, the Court does not find a class action to be superior to individual actions for the litigation of Plaintiffs' claims.

## <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification, filed July 28, 2006, **[Doc. No. 68],** is hereby **DENIED.**

Dated this 22nd day of March, 2007.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorneys for Plaintiffs</u>:
  Gerard V. Mantese, Esq.
  Mark Rossman, Esq.
  William S. Ferguson, Esq.

<u>Attorneys for Defendant Philip Morris USA Inc</u>:

  Andrew G. Schultz, Esq.
  Gregory P. Stone, Esq.
  Martin D. Bern, Esq.